The Honorable Judge Lauren King

```
_____ FILED       _____ ENTERED
_____ LODGED      _____ RECEIVED

         SEP 08 2025

         AT SEATTLE
    CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                       DEPUTY
```

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 2:25-cr-00005-LK |
| Plaintiff, | |
| v. | **PLEA AGREEMENT** |
| BRANDEN TRAGER, | |
| Defendant. | |

The United States, through Acting Assistant Attorney General Adam R.F. Gustafson and Senior Trial Attorney Ryan Connors of the U.S. Department of Justice Environment and Natural Resources Division, and Branden Trager and his attorney, Jeffrey Kradel, enter into the following Plea Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).

1. **The Charge**. Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enter a plea of guilty to the charge contained in the Superseding Information: Lacey Act Trafficking, in violation of Title 16, United States Code, Sections 3372(a)(1), 3372(a)(2)(A), 3372(a)(4) and 3373(d)(2). Defendant understands the Superseding Information charges conduct that

Plea Agreement - 1
UNITED STATES v. TRAGER, et al., CR 25-5 LK

ENVIRONMENT AND
NATURAL RESOURCES DIV.
150 M ST. NE,
WASHINGTON, DC 20002
(202) 305-0321

Defendant directly committed and acts he aided and abetted others to commit, pursuant to 18 U.S.C. Section 2(a).

By entering a plea of guilty, Defendant hereby waives all objections to the form of the Superseding Information. Defendant further understands that before entering any guilty plea, Defendant will be placed under oath. Any statement given by Defendant under oath may be used by the United States in a prosecution for perjury or false statements.

2. **Elements of the Offenses.** The elements of Lacey Act Trafficking to which Defendant is pleading guilty are as follows:

    a.    The Defendant knowingly engaged in conduct that involved the sale and purchase of wildlife;

    b.    The Defendant knowingly transported or attempted to transport the wildlife;

    c.    In the exercise of due care, the Defendant should have known the wildlife was taken or possessed in violation of, or in a manner unlawful under, any law, regulation, or treaty of the United States or in violation of foreign law.

The elements of Aiding and Abetting are:

    a. Someone else committed Lacey Act Trafficking;

    b. Defendant aided, counseled, commanded, induced, or procured that person with respect to at least one element of Lacey Act Trafficking;

    c. Defendant acted before the crime was completed.

3. **The Penalties.** Defendant understands that the statutory penalties applicable to the offense to which Defendant is pleading guilty are as follows:

    a.    A maximum term of imprisonment of up to one year, a fine of up to $100,000 or twice the gross gain or loss, a period of supervision following release from prison of up to one year, and a mandatory special assessment of $25. If a probationary sentence is imposed, the probation period can be for up to five years.

Plea Agreement - 2
UNITED STATES v. TRAGER, et al., CR 25-5 LK

ENVIRONMENT AND
NATURAL RESOURCES DIV.
150 M ST. NE,
WASHINGTON, DC 20002
(202) 305-0321

Defendant understands that supervised release is a period of time following imprisonment during which Defendant will be subject to certain restrictive conditions and requirements. Defendant further understands that, if supervised release is imposed and Defendant violates one or more of the conditions or requirements, Defendant could be returned to prison for all or part of the term of supervised release that was originally imposed. This could result in Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

Defendant understands that as a part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order Defendant to pay restitution to any victim of the offense, as required by law.

Defendant further understands that the consequences of pleading guilty may include the forfeiture of certain property, either as a part of the sentence imposed by the Court, or as a result of civil judicial or administrative process.

Defendant agrees to submit a completed Financial Disclosure Statement as requested by the Government.

4. **Immigration Consequences.** Defendant recognizes that pleading guilty may have consequences with respect to Defendant's immigration status if Defendant is not a citizen of the United States. Under federal law, a broad range of crimes are grounds for removal, and some offenses make removal from the United States presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, and Defendant understands that no one, including Defendant's attorney and the Court, can predict with certainty the effect of a guilty plea on immigration status. Defendant nevertheless affirms that Defendant wants to plead guilty regardless of any immigration consequences that Defendant's guilty plea may entail, even if the consequence is Defendant's mandatory removal from the United States.

5. **Rights Waived by Pleading Guilty.** Defendant understands that by pleading guilty, Defendant knowingly and voluntarily waives the following rights:

Plea Agreement - 3
UNITED STATES v. TRAGER, et al., CR 25-5 LK

ENVIRONMENT AND
NATURAL RESOURCES DIV.
150 M ST. NE,
WASHINGTON, DC 20002
(202) 305-0321

      a.      The right to plead not guilty and to persist in a plea of not guilty;

      b.      The right to a speedy and public trial before a jury of Defendant's peers;

      c.      The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for Defendant;

      d.      The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

      e.      The right to confront and cross-examine witnesses against Defendant at trial;

      f.      The right to compel or subpoena witnesses to appear on Defendant's behalf at trial;

      g.      The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

      h.      The right to appeal a finding of guilt or any pretrial rulings.

6.    **United States Sentencing Guidelines.**  Defendant understands and acknowledges that the Court must consider the sentencing range calculated under the United States Sentencing Guidelines and possible departures under the Sentencing Guidelines together with the other factors set forth in Title 18, United States Code, Section 3553(a), including: (1) the nature and circumstances of the offense; (2) the history and characteristics of Defendant; (3) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of Defendant; (6) the need to provide Defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to

Plea Agreement - 4
UNITED STATES v. TRAGER, et al., CR 25-5 LK

ENVIRONMENT AND
NATURAL RESOURCES DIV.
150 M ST. NE,
WASHINGTON, DC 20002
(202) 305-0321

avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records. Accordingly, Defendant understands and acknowledges that:

    a.    The Court will determine Defendant's Sentencing Guidelines range at the time of sentencing;

    b.    After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. § 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

    c.    The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

    d.    Defendant may not withdraw a guilty plea solely because of the sentence imposed by the Court.

7.    **Ultimate Sentence**. Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

8.    **Statement of Facts**. Defendant admits he is guilty of the charged offense. The parties agree on the facts contained in Exhibit 1.

The parties agree that the Court may consider additional facts contained in the Presentence Report (subject to standard objections by the parties) and/or that may be presented by the United States or Defendant at the time of sentencing, and that the factual statement contained herein is not intended to limit the facts that the parties may present to the Court at the time of sentencing.

9.    **Sentencing Factors**. The parties agree that the following Sentencing Guidelines provisions apply to this case:

    a.    The base offense level is six, pursuant to USSG § 2Q2.1(a).

    b.    The offense level should be increased by two levels pursuant to USSG § 2Q2.1(b)(1)(B) because the offense involved a pattern of similar violations.

Plea Agreement - 5
UNITED STATES v. TRAGER, et al., CR 25-5 LK

ENVIRONMENT AND
NATURAL RESOURCES DIV.
150 M ST. NE,
WASHINGTON, DC 20002
(202) 305-0321

        c.      Pursuant to USSG § 2Q2.1(b)(3)(A), the offense level should be increased by the number of levels in the USSG § 2B1.1 table that corresponds to the wildlife's market value. The parties agree to a six-level increase for a market value exceeding $40,000 but less than $95,000.

        d.      The offense level should be increased by two levels because the defendant attempted to obstruct or impede the administration of justice with respect to the investigation of the instant offense of conviction and the obstructive conduct related to the defendant's offense of conviction and any relevant conduct. USSG § 3C1.1.

        e.      Assuming Defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his entry of this proposed guilty plea and subsequent conduct prior to the imposition of sentence, a three-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a), (b).

        f.      The offense level should be reduced by two levels because the Defendant has a criminal history score of zero pursuant to USSG § 4C1.1.

The parties agree that neither a downward nor an upward departure from the Guidelines range resulting from the stipulated Guidelines calculation set forth above is warranted. Accordingly, neither party will seek any departure or adjustment pursuant to the Guidelines that is not set forth herein. Nor will either party in any way suggest that the Probation Office or the Court consider such a departure or adjustment under the Guidelines, or that any other provision of the Guidelines should apply to the calculation of Defendant's sentencing Guidelines range. The parties nevertheless understand the Probation Office may freely consider and recommend a departure, adjustment, or application of any other provision. The parties agree that either party may seek any lawful sentence based upon the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a). Defendant understands that at the time of sentencing, the Court may reject these stipulated adjustments and may apply additional

Plea Agreement - 6
UNITED STATES v. TRAGER, et al., CR 25-5 LK

ENVIRONMENT AND
NATURAL RESOURCES DIV.
150 M ST. NE,
WASHINGTON, DC 20002
(202) 305-0321

downward or upward adjustments in determining Defendant's Sentencing Guidelines range.

10. **Acceptance of Responsibility.** At sentencing, if the Court concludes Defendant qualifies for a downward adjustment for acceptance of responsibility pursuant to USSG § 3E1.1(a) and Defendant's offense level is 16 or greater, the United States will make the motion necessary to permit the Court to decrease the total offense level by three levels pursuant to USSG §§ 3E1.1(a) and (b), because Defendant has assisted the United States by timely notifying the United States of Defendant's intention to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

11. **Imposition of a Fine.** The parties agree to jointly recommend the Court impose a fine of $100,000 as part of the sentence. If the Court issues a fine, it will be payable immediately unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The parties are free to make any recommendation to the Court regarding a payment schedule. Pursuant to 34 U.S.C. § 20101(b)(1)(A), any fine imposed will be paid by the clerk into the Cooperative Endangered Species Conservation Fund, also known as the Lacey Act reward fund. 16 U.S.C. § 3375(d).

12. **Public Statement.** The parties agree to jointly recommend that the Court require the Defendant to make a written public statement detailing the Defendant's contrition for his offense conduct and emphasizing the importance of hunting, guiding, and wildlife regulations. The language of the public statement must be agreed upon by the United States prior to entry of the Defendant's plea. The public statement must be posted and readily available on the following webpages and account: AdventuresWithMayhemOutfitters.com, Facebook account Adventures with Mayhem Outfitters, and Instagram account CalicoCaptain. The Defendant agrees to maintain each of these accounts and webpages and the public statement on those accounts and webpages for a period of one year from the date of sentencing. The Defendant agrees to

Plea Agreement - 7
UNITED STATES v. TRAGER, et al., CR 25-5 LK

ENVIRONMENT AND
NATURAL RESOURCES DIV.
150 M ST. NE,
WASHINGTON, DC 20002
(202) 305-0321

maintain each of the accounts and webpages as his primary business accounts and agrees not to use alternative or create new business accounts or webpages during the period the public statement is published. The Defendant also agrees to publish the public statement in a national or regional hunting or guiding magazine mutually agreed upon with the Government within three months from the date of sentencing.

13. **Abandonment of Contraband.** Defendant also agrees that, if any federal or foreign law enforcement agency seized any illegal contraband, including wildlife, that was in Defendant's direct or indirect control, Defendant consents to the federal administrative disposition, official use, and/or destruction of that contraband.

14. **Non-Prosecution of Additional Offenses.** As part of this Plea Agreement, the Environmental Crimes Section of the United States Department of Justice agrees not to prosecute Defendant for any additional offenses known to it as of the acceptance of this Plea Agreement based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation, and will move to dismiss the remaining counts in the Indictment at the time of sentencing. In this regard, Defendant recognizes the United States has agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Plea Agreement. Defendant agrees, however, that for purposes of preparing the Presentence Report, the Environmental Crimes Section will provide the United States Probation Office with evidence of all conduct committed by Defendant.

Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119 (1997).

15. **Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that, if Defendant breaches this Plea Agreement, the United States may withdraw from this Plea

Plea Agreement - 8
UNITED STATES v. TRAGER, et al., CR 25-5 LK

ENVIRONMENT AND
NATURAL RESOURCES DIV.
150 M ST. NE,
WASHINGTON, DC 20002
(202) 305-0321

Agreement and Defendant may be prosecuted for all offenses for which the United States has evidence or charged in the Indictment. Defendant agrees not to oppose any steps taken by the United States to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement. Defendant also agrees that, if Defendant is in breach of this Plea Agreement, Defendant has waived any objection to the re-institution of any charges that previously were dismissed or any additional charges that had not been prosecuted.

Defendant further understands that if, after the date of this Plea Agreement, Defendant should engage in illegal conduct, or conduct that violates any conditions of release or the conditions of confinement (examples of which include, but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services Officer, Probation Officer, or Court), the United States is free under this Plea Agreement to file additional charges against Defendant or to seek a sentence that takes such conduct into consideration by requesting the Court to apply additional adjustments or enhancements in its Sentencing Guidelines calculations in order to increase the applicable advisory Guidelines range, and/or by seeking an upward departure or variance from the calculated advisory Guidelines range. Under these circumstances, the United States is free to seek such adjustments, enhancements, departures, and/or variances even if otherwise precluded by the terms of the Plea Agreement.

16. **Waiver of Appellate Rights and Rights to Collateral Attacks.** Defendant acknowledges that, by entering the guilty plea required by this Plea Agreement, Defendant waives all rights to appeal from Defendant's conviction, and any pretrial rulings of the Court, and any rulings of the Court made prior to entry of the judgment of conviction. Defendant further agrees that, provided the Court imposes a custodial sentence that is within or below the Sentencing Guidelines range (or the

Plea Agreement - 9
UNITED STATES v. TRAGER, et al., CR 25-5 LK

ENVIRONMENT AND
NATURAL RESOURCES DIV.
150 M ST. NE,
WASHINGTON, DC 20002
(202) 305-0321

statutory mandatory minimum, if greater than the Guidelines range) as determined by the Court at the time of sentencing, Defendant waives to the full extent of the law:

    a. Any right conferred by Title 18, United States Code, Section 3742, to challenge, on direct appeal, the sentence imposed by the Court, including any fine, restitution order, probation or supervised release conditions, or forfeiture order (if applicable); and

    b. Any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation.

This waiver does not preclude Defendant from bringing an appropriate motion pursuant to 28 U.S.C. § 2241, to address the conditions of Defendant's confinement or the decisions of the Bureau of Prisons regarding the execution of Defendant's sentence.

If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to effectiveness of legal representation) the conviction or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

17. **Voluntariness of Plea.** Defendant agrees that Defendant has entered into this Plea Agreement freely and voluntarily, and that no threats or promises were made to induce Defendant to enter a plea of guilty other than the promises contained in this Plea Agreement or set forth on the record at the change of plea hearing in this matter.

18. **Statute of Limitations.** In the event this Plea Agreement is not accepted by the Court for any reason, or Defendant breaches any of the terms of this Plea Agreement, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to: (1) thirty days following the date of non-acceptance of the Plea Agreement by the Court; or (2) thirty days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

Plea Agreement - 10
UNITED STATES v. TRAGER, et al., CR 25-5 LK

ENVIRONMENT AND
NATURAL RESOURCES DIV.
150 M ST. NE,
WASHINGTON, DC 20002
(202) 305-0321

19. **Dismissal of Counts**. If this Plea Agreement is accepted by the Court and the Defendant does not breach any of its terms, the United States will request after sentencing that that Court dismiss all charges and forfeiture allegations in the Indictment.

20. **Completeness of Plea Agreement**. The United States and Defendant acknowledge that these terms constitute the entire Plea Agreement between the parties, except as may be set forth on the record at the change of plea hearing in this matter. This Plea Agreement binds only the Environmental Crimes Section of the United States Department of Justice. It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor.

Dated this 8th day of September, 2025.

BRANDEN TRAGER
Defendant

Jeffrey Kradel
Kradel Defense PLLC
Attorney for Defendant


Adam Gustafson
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice


Ryan Connors
Senior Trial Attorney
Environmental Crimes Section
U.S. Department of Justice

Plea Agreement - 11
UNITED STATES v. TRAGER, et al., CR 25-5 LK

ENVIRONMENT AND
NATURAL RESOURCES DIV.
150 M ST. NE,
WASHINGTON, DC 20002
(202) 305-0321

EXHIBIT 1

Joint Factual Statement

1. Defendants TRAGER and MAYHEM, acting through its agents and employees, including TRAGER, who were acting within the scope of their agency and employment for the intended benefit, at least in part, of MAYHEM, admit guilt to the charged offense. The parties agree on the following facts:

    a. The Lacey Act made it unlawful for any person, including a corporation, to knowingly engage in conduct that involved the sale and purchase of wildlife and to knowingly transport and attempt to transport said wildlife that in the exercise of due care they should have known were taken and possessed in violation of, and in a manner unlawful under, any law, regulation, and treaty of the United States and in violation of foreign law. 16 U.S.C. §§ 3372(a)(1), 3372(a)(2)(A), 3372(a)(4), and 3373(d).

    b. Under the Lacey Act, it was deemed a sale or purchase for a person for money or other consideration to offer or provide guiding, outfitting, or other services; or a hunting license or permit for the illegal taking acquiring, receiving, transporting, or possessing of wildlife. 16 U.S.C. § 3372(c).

    c. The Migratory Bird Treaty Act ("MBTA") implemented U.S. treaties with Canada, Japan, Mexico, and Russia to ensure sustainable populations of migratory birds. The MBTA made it unlawful, at any time, by any means or in any manner, to pursue, hunt, take, capture, kill, attempt to take, capture, or kill, possess, offer for sale, sell, offer to barter, barter, offer to purchase, purchase, deliver for shipment, ship, export, import, cause to be shipped, exported, or imported, deliver for transportation, transport or cause to be transported, carry or cause to be carried, or receive for shipment, transportation, carriage, or export, any migratory bird native to the United States or its territories without a permit. 16 U.S.C. § 703.

    d. "Take" meant to pursue, hunt, shoot, wound, kill, trap, capture, or collect, or attempt to do the same. 50 C.F.R. § 10.12.

      e.    Under the MBTA it was illegal:

1. to take migratory game birds from or by means, aid, or use of any motor vehicle or motor-driven land conveyance. 50 C.F.R. § 20.21(d).
2. to take migratory game birds by any means or aid of any motor-driven land, water, or air conveyance, or any sailboat used for the purpose of or resulting in the concentrating, driving, rallying, or stirring up of any migratory bird. 50 C.F.R. § 20.21(h)
3. to take in any one calendar day more than the daily bag limit or possess more migratory game birds taken in the United States than the possession limit. 50 C.F.R. §§ 20.24, 20.33.
4. to kill or cripple any migratory game bird without making a reasonable effort to retrieve the bird, and retain it in their actual custody, at the place where taken or between that place and either (a) their automobile or principal means of land transportation; or (b) their personal abode or temporary or transient place of lodging; or (c) a migratory bird preservation facility; or (d) a post office; or (e) a common carrier facility. 50 C.F.R. § 20.25.
5. to transport, possess, or have in custody any migratory game bird or part thereof taken in violation of the MBTA. 50 C.F.R. §§ 20.31, 20.41.
6. to transport migratory birds belonging to another person unless such bird was tagged as required 50 C.F.R. § 20.42.

      f.    Every migratory game bird wounded by hunting and reduced to possession by the hunter was to be immediately killed and become part of the daily bag limit. 50 C.F.R. § 20.38.

|   |   |   |
|---|---|---|
| | g. | The harlequin duck (*Histrionicus histrionicus*) was a small sea duck with a habitat ranging from Alaska to California prized by hunters. |
| | h. | The Washington Division of Fish and Wildlife closed harlequin hunting for the 2022 – 2023 season, prohibiting any take or harvest. Wash. Admin. Code 220-416-060 (2022). |
| | i. | It was lawful in British Columbia, Canada, for hunters to take two harlequins per day during the 2022 – 2023 season. British Columbia Wildlife Act ("B.C.W.A."), Hunting Regulation § 12(a)(vi). |
| | j. | British Columbia law regulated the hunting and guiding of hunts for birds: |

1. All birds listed in the Migratory Birds Convention Act, which included the harlequin, were listed as game birds. B.C.W.A., Designation and Exemption Regulation § 14(b). Game birds were classified as small game. *Id.* § 15(j).
2. It was unlawful for a person to guide for game or offer to guide for game unless they held a guide outfitter license or accompanied or assisted a person to hunt game birds or small game on land other than Crown land. B.C.W.A. §§ 48(1)(a), (d).
3. A British Columbia guide outfitter license was only eligible for Canadian citizens or permanent residents. B.C.W.A. § 51(1)(a)(i).
4. A "guide" meant a person who, for compensation or reward received or promised, accompanied and assisted another person to hunt wildlife, but did not include a guide for fish. B.C.W.A. § 1(1).
5. A "guide outfitter" meant a person licensed as a guide outfitter under this Act. *Id.*

k. TRAGER and MAYHEM knowingly engaged in conduct that involved the sale and purchase of wildlife and knowingly transported and attempted to transport said wildlife that in the exercise of due care they should have known was taken and possessed in violation of and in a manner unlawful under any foreign law or any law, regulation, and treaty of the United States, or to attempt to do so, or to aid and abet another in the commission of such conduct.

l. Throughout the relevant period, TRAGER and MAYHEM guided hunts in British Columbia, Canada, for the harlequin and other birds without the required guide outfitter license. TRAGER and MAYHEM received payments in exchange for guiding waterfowl hunting trips in Washington and Canada, transported hunters across the U.S. border, and guided hunts in Canada.

m. Also during the relevant period, TRAGER and MAYHEM aided and abetted the acceptance of money to taxidermy birds hunted in Canada and export them to the United States.

n. For example, between November 14, 2022, and November 18, 2022, in exchange for money, TRAGER professionally guided a hunting group in British Columbia, Canada, resulting in the shooting of birds. TRAGER drove the hunters across the border at Blaine, Washington. During that trip, and others, TRAGER facilitated providing the hunters' birds for a taxidermist in preparation for exportation to the United States. TRAGER professionally guided a similar trip in Canada between December 14, 2022, and December 19, 2022.

o. Further, between January 6, 2023, and January 8, 2023, TRAGER guided a hunting group near Tacoma, Union, and Long Beach in the Western District of Washington. During the hunting trip, TRAGER and MAYHEM engaged in violations of the MBTA.

//
//
//