The Honorable Lauren King

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 2:25-cr-5-LK |
| Plaintiff, | |
| v. | **UNITED STATES'** |
| BRANDEN TRAGER, | **SENTENCING MEMORANDUM** |
| Defendant. | |

The United States, through Principal Deputy Assistant Attorney General Adam Gustafson and Senior Trial Attorney Ryan Connors of the U.S. Department of Justice Environment and Natural Resources Division, submits this Sentencing Memorandum pursuant to Rule 32 of the Federal Rules of Criminal Procedure. The government respectfully recommends that the Court sentence the defendant to three years' probation, a $100,000 fine, 240 hours of community service, and $25 mandatory special assessment.

**1. PROCEDURAL AND FACTUAL BACKGROUND**

a. <u>Procedural History</u>

On January 15, 2025, the grand jury returned an indictment charging Branden Trager and co-defendant Mayhem Services, LLC, with conspiracy and a felony Lacey

UNITED STATES *v.* TRAGER, CR25-5 LK
U.S. SENTENCING MEMO - 1

U.S. DEPT. OF JUSTICE
ENVIRONMENTAL CRIMES SECTION
150 M ST. NE, WASHINGTON, DC 20002
(202) 598-3826

1  Act trafficking offense. After the government addressed problems with an initial plea
2  agreement, it filed a second superseding information on September 8, 2025, to which the
3  defendants pleaded guilty. The Court accepted that plea in an order filed on September
4  24, 2025. Dkt No. 54. Sentencing is scheduled for December 3, 2025.

   b. Factual Background

6  The Presentence Investigation Report (PSR), indictment, superseding informations,
7  and joint factual statement (JFS) contain the relevant facts. In essence, the defendant's
8  conduct involved two schemes. First, he led bird hunting trips in Canada where he was
9  not authorized to work as a guide. He planned for the illegally-hunted waterfowl to be
10 imported to the United States in violation of the Lacey Act. Second, he guided a
11 Washington State hunting trip where he and client hunters violated the Migratory Bird
12 Treaty Act (MBTA). He then transported the taken birds contrary to the Lacey Act. He
13 acknowledged that in the exercise of due care, he should have known the birds were
14 illegally taken. The government highlights some of the specific facts below where
15 relevant to the sentencing factors in 18 U.S.C. § 3553(a).

## 2. APPLICATION OF THE SENTENCING GUIDELINES

In light of United States v. Booker and its progeny, "even though the Guidelines are advisory, they are still the 'starting point and the initial benchmark' for the sentencing process." United States v. Ellis, 641 F.3d 411, 415 (9th Cir. 2011). When determining the appropriate offense level, a court may rely on any undisputed facts and statements contained in the PSR. United States v. Fitch, 659 F.3d 788, 791 (9th Cir. 2011).

The government and defendant stipulated to the sentencing guidelines calculation, and the PSR came to the same recommendation. The base offense level is six. U.S.S.G. § 2Q2.1; PSR ¶ 22. There is a specific offense characteristic increase of two points for pecuniary gain or a pattern of similar violations. U.S.S.G. § 2Q2.1(b)(1); PSR ¶ 23. There is an additional increase of six points due to the market value of the wildlife's being greater than $40,000 but less than $95,000. U.S.S.G. § 2Q2.1(b)(3)(A); PSR ¶ 24. There is another increase of two points in that the defendant attempted to or willfully obstructed

justice. U.S.S.G. § 3C1.1; PSR ¶ 27. Finally, the defendant has demonstrated an acceptance of responsibility, resulting in a decrease of three levels. U.S.S.G. §§ 3E1.1(a), (b); PSR ¶¶ 30, 31.

The PSR assigns the defendant a criminal history category of one. PSR ¶ 36. The government agrees with this calculation. The defendant is eligible for a further two-point deduction as a zero-point offender. U.S.S.G. §§ 4C1.1(a), (b); PSR ¶ 29. Thus, the defendant's total offense level is 11. A criminal history category I and a total offense level of 1 result in an advisory Guidelines range of eight to 14 months' imprisonment. The Guidelines range exceeds the 12-month statutory maximum sentence.

### 3. APPLICATION OF THE 18 U.S.C. § 3553(a) FACTORS

Pursuant to Booker and related cases, the sentencing range set forth in the PSR, while advisory, continues to serve as "the 'starting point and the initial benchmark' . . . and are to be kept in mind throughout the process." United States v. Carty, 520 F.3d 984, 991 (9th Cir. 2008). Once the court has resolved any disputed guideline issues, the court should consider the relevant §3553(a) factors to make an individualized determination based on the facts. Id.

Under § 3553(a), "[t]he Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). Those purposes are "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2). In determining that sentence, this Court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), "the kinds of sentences available," § 3553(a)(3), the Guidelines and Guideline range, § 3553(a)(4), the Guidelines' policy statements, § 3553(a)(5), "the need to avoid unwarranted sentence disparities among defendants with similar records who have been

UNITED STATES *v.* TRAGER, CR25-5 LK  
U.S. SENTENCING MEMO - 3  

U.S. DEPT. OF JUSTICE  
ENVIRONMENTAL CRIMES SECTION  
150 M ST. NE, WASHINGTON, DC 20002  
(202) 598-3826

1  found guilty of similar conduct," § 3553(a)(6), and "the need to provide restitution to any
2  victims of the offense," § 3553(a)(7). For the reasons below, the government respectfully
3  recommends that three years of probation with specific conditions, a $100,00 fine, and
4  240 hours of community service is appropriate.

       *i. Nature of the Offense*

6        The defendant enriched himself by breaking federal laws relating to hunting
7  wildlife. In 2022 the defendant had sold several overnight hunting trips, with clients
8  paying an extra $600 to kill a harlequin duck. The harlequin duck (*Histrionicus*
9  *histrionicus*) is a small sea duck ranging from Alaska to California. It is protected under
10 the federal MBTA, Canadian law, and state laws in Alaska, California, Oregon, and
11 Washington. Below is a photograph of a male harlequin duck, courtesy of Peter Pearsall
12 of the U.S. Fish and Wildlife Service (USFWS):



22       Many hunters target the harlequin due to its striking appearance and to complete
23 an achievement challenge to collect all 41 North American waterfowl species.
24 Washington State had typically allowed hunters to take one harlequin per day, but in June
25 2022, the Washington Division of Fish and Wildlife (WDFW) closed harlequin duck
26 hunting. WDFW found declining population numbers and concerns on the impact of
27 "human disturbance, degradation of coastal habitats, pollutant discharge and reduction of
28 marine forage." https://wdfw.wa.gov/species-habitats/species/histrionicus-histrionicus,

UNITED STATES *v.* TRAGER, CR25-5 LK             U.S. DEPT. OF JUSTICE
U.S. SENTENCING MEMO - 4                           ENVIRONMENTAL CRIMES SECTION
                                                                       150 M ST. NE, WASHINGTON, DC 20002
                                                                                 (202) 598-3826

last viewed Nov. 22, 2025. WDFW also closed the 2023 hunting season for harlequins, which are listed as a state Species of Greatest Conservation Need and Priority Species. *Id*.

Rather than cancel the booked hunts or proceed without pursuing harlequin ducks, the defendant pivoted to take his clients to Canada, where limited harlequin hunting was permitted. He researched British Columbia regulations, which prohibit non-Canadian citizens from working as a hunting guide or outfitter. He could have partnered with a licensed Canadian guide but chose to illegally lead the hunts himself.

Between November 2022 and January 2023, the defendant led at least three trips involving eight hunters to Canada, crossing the border near Blaine, Washington. All of the hunters successfully -- and illegally -- killed harlequin ducks while the defendant guided. They paid a taxidermist to mount the ducks and ship them back to the United States; the Lacey Act prohibits attempting to import wildlife that has been taken in violation of foreign law. After the first hunt, the defendant told the taxidermist that he would expand his business through Canadian hunts in the following years. One hunter posted photographs on social media of their successful harlequin hunt:



UNITED STATES *v*. TRAGER, CR25-5 LK
U.S. SENTENCING MEMO - 5

U.S. DEPT. OF JUSTICE
ENVIRONMENTAL CRIMES SECTION
150 M ST. NE, WASHINGTON, DC 20002
(202) 598-3826

The defendant also guided four hunters, two of whom were undercover USFWS special agents, on a waterfowl trip through Long Beach, Tacoma, and Union, Washington in January 2023. During each day of the hunt, the agents observed the defendant both directly violate the MBTA and aid the hunters to do the same. For example:

1. One hunter shot a grebe, a diving bird which is protected from harvest by the MBTA. The defendant told the hunter to leave the carcass in the water. The MBTA required hunters to collect all felled birds and report any illegal takes to a game warden.

2. The hunters shot birds over their daily quantity limit, or the defendant allowed them to aggregate their quotas among each other. The MBTA prohibits both practices.

3. The defendant drove his boat into flocks of birds, causing them to take flight. He also saw a ring-necked duck in a creek while driving to a hunting site; he instructed a hunter to get out and shoot it from the road. The MBTA prohibits rallying birds into the air where they are more easily hunted, shooting from a road, or using a land vehicle to hunt.

### ii. Defendant's History and Characteristics

The government recognizes that the defendant had no prior criminal record, served the country in the U.S. Army, and volunteered to assist veterans. But in choosing to be a hunting guide, the defendant placed himself in a position of responsibility. Hunters rely on the guide to know what they can hunt, where to do it, and what the proper rules are. In failing to exercise due care, the defendant allowed his clients to violate the law.

As mentioned above, the defendant agreed to a sentencing enhancement for obstruction for justice. On a January 2023 trip in Canada, a British Columbia conservation officer inspected the hunting party. The defendant falsely told the officer that they were all friends and that he was not being paid. When asked, he could not recall one of the hunter's names. When they finished hunting, they crossed back to the United States at Blaine. At the border, a Homeland Security Investigations special agent interviewed the defendant, who again falsely reported that they were friends from a

UNITED STATES *v.* TRAGER, CR25-5 LK
U.S. SENTENCING MEMO - 6

U.S. DEPT. OF JUSTICE
ENVIRONMENTAL CRIMES SECTION
150 M ST. NE, WASHINGTON, DC 20002
(202) 598-3826

hunting club. The defendant stated, "I did not take a dime man… I wouldn't risk all of that for a [expletive] duck." The defendant's obstruction reveals his character. He was willing to lie to foreign and U.S. law enforcement to profit and avoid the consequences of his actions.

### iii. Deterrence

The proposed sentence will deter the defendant and other hunting guides from violating the Lacey Act. The fine disgorges the defendant's profits from the trips, reflects the value of the illegally killed birds, and resolves the forfeiture claim against his truck, boat, and equipment used to facilitate breaking the law. Pursuant to 34 U.S.C. § 20101(b)(1)(A), any fine imposed by the Court should be paid by the clerk into the Cooperative Endangered Species Conservation Fund. 18 § U.S.C. 3375(d). Congress authorized the fund to assist Lacey Act enforcement and support conservation. The government recommends that the defendant be able to make monthly or quarterly payments over the course of probation to satisfy any imposed fine.

The proposed sentence also serves general deterrence to other hunting guides and outfitters, who will see the consequences for breaking wildlife laws. To that end, the defendant has agreed to make a public statement regarding guiding rules and demonstrating his regret, which will be published in a trade journal within 90 days of sentencing and remain for one year on his social media and corporate websites, to wit AdventureswithMayhemOutfitters.com, Facebook account Adventures with Mayhem Outfitters, and Instagram account CalicoCaptain. The government requests that keeping this message published until December 3, 2026, be a special condition of probation. The parties have agreed on the language of the statement:

> The Lacey Act is a vital tool for the protection of ecosystems, the promotion of biodiversity, and the support of conservations efforts in the United States and beyond. The Migratory Bird Treaty Act is similarly critical – that Act protects over 1,000 bird species and – along with responsible outdoorsmanship – plays a key role in conserving those bird populations, preserving ecosystems, and honoring the United States'

UNITED STATES *v.* TRAGER, CR25-5 LK  
U.S. SENTENCING MEMO - 7

U.S. DEPT. OF JUSTICE  
ENVIRONMENTAL CRIMES SECTION  
150 M ST. NE, WASHINGTON, DC 20002  
(202) 598-3826

international commitments to the maintenance of ecological balance across North America.

Wildlife guides – myself included – are on the frontline of responsibility for upholding those federal laws. Guides have a particular duty to understand and uphold the many regulations that flow from each of these Acts. I failed to follow those laws as I should have. I recognize now that certain guiding practices I was previously involved in did not comply with the Acts, and that I should have known as much. I deeply regret those actions and have redoubled my own efforts to understand and uphold the laws and regulations bearing on U.S. fishing and hunting.

### iv. Sentencing Disparity

The guidelines strive to provide consistent recommendations for defendants who commit similar crimes. The government is unaware of any similar federal prosecutions where a defendant illegally guided in another country. But the Court may find the cases below involving the Lacey Act persuasive in determining the appropriate sentence:

A defendant owned a guiding company and from 2015 to 2019 allowed unlicensed hunters to illegally take white-tailed deer and turkeys and falsely claim which state from which they were hunted. He had no criminal record and was sentenced to a $20,000 fine, $80,000 in restitution, and five years of probation for violating the Lacey Act. United States v. Swigart, No. 4:22-cr-00117 (S.D. Iowa).

From 2015 to 2017, two defendants ran a hunting guide company and conspired to allow hunters to take mule deer, turkeys, and other wildlife in violation of state law and lie about where they came from. The defendants and their corporation were sentenced on the Lacey Act to a total of $75,000 in fines, 40 hours of community service, $44,000 in forfeiture, and three years of probation. United States v. Bowmar Bowhunting, LLC, et al, No. 8:20-cr-00178 (D. Neb.).

In 2023 a defendant killed two caribou and a black bear contrary to the Lacey Act while falsely stating he was an Alaska resident. The court sentenced him to a $12,000 fine and 18 months of probation to include a ban on hunting. United States v. Bundy, No.

UNITED STATES *v.* TRAGER, CR25-5 LK
U.S. SENTENCING MEMO - 8

U.S. DEPT. OF JUSTICE
ENVIRONMENTAL CRIMES SECTION
150 M ST. NE, WASHINGTON, DC 20002
(202) 598-3826

3:23-cr-00029 (D. Alaska).

**4. CONCLUSION**

For the aforementioned reasons, the United States respectfully requests that the Court impose a sentence of three years' probation, a $100,000 fine, 240 hours of community service, and $25 special assessment.

November 25, 2025

                                                Adam Gustafson
                                                Principal Deputy Assistant Attorney General
                                                Environment and Natural Resources Division
                                                U.S. Department of Justice

                                                */s/ Ryan Connors*
                                                _____
                                                Ryan C. Connors
                                                Senior Trial Attorney
                                                Environmental Crimes Section
                                                U.S. Department of Justice

UNITED STATES *v.* TRAGER, CR25-5 LK
U.S. SENTENCING MEMO - 9

U.S. DEPT. OF JUSTICE
ENVIRONMENTAL CRIMES SECTION
150 M ST. NE, WASHINGTON, DC 20002
(202) 598-3826